Diego **ORDONEZ–ROJOP**, Petitioner,

v.

**U.S. ATTORNEY GENERAL,**
**Respondent.**

**No. 15–15694**
**Non–Argument Calendar**

United States Court of Appeals,
Eleventh Circuit.

Date Filed: 11/17/2016

Virlenys Hernandez Palma, The Law Offices of Virlenys H. Palma, PA, Homestead, FL, for Petitioner.

Laura M.L. Maroldy, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, OIL, Office of Immigration Litigation, Washington, DC, Michelle Ressler, District Counsel's Office, USICE, Miami, FL, for Respondent.

Before ED CARNES, Chief Judge, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Diego Ordonez–Rojop seeks review of the Board of Immigration Appeals' final order, which affirmed the Immigration Judge's denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. Ordonez–Rojop contends that he established that he suffered past persecution due to his service in the Guatemalan National Army. He also argues that he has established a well-founded fear of persecution.

I.

Ordonez–Rojop served in the Guatemalan National Army for nearly three years beginning in 1983. After his discharge, he and several other men were selected by the government in 1993 to recruit young men from his community and train them to defend the community against guerilla forces. At his hearing before the IJ, Ordonez–Rojop testified that the Guatemalan government provided weapons for him and his young recruits, but did not pay the recruits. Ordonez–Rojop continued to recruit and train young men in his community until 1996.

In 1996 the Guatemalan government signed peace accords with the Guatemalan National Revolutionary Unity. Ordonez–Rojop testified that, after the peace accords were signed, his former recruits tried to kill him. He testified that they beat him several times with metal and wooden objects, leaving him with scars on his chest, face, and left arm. Ordonez–Rojop also testified that he reported the assaults to the authorities in Guatemala, but they refused to do anything because they were afraid of the guerillas, with whom his former recruits were somehow affiliated.

The IJ found that Ordonez–Rojop's testimony about why his former recruits

turned on him was unclear. At one point, he testified that the recruits were angry because they had not been paid for their service and believed he had received a lot of money from the government. At another point he testified that they were angry because there was "no justice" following the 1996 accords. And at a third point Ordonez–Rojop asserted that he was targeted because the recruits' parents received food and money from the guerillas, believed he was being paid by the government, and "brainwashed" the former recruits against him.

Between 1996 and 2002 Ordonez–Rojop worked along the coast because he was afraid he would be killed if he returned to his community. According to him, he returned home every few months to visit his wife, but never stayed because he feared for his life. Ordonez–Rojop stated that a group of forty men, made up of his former recruits, followed him around Guatemala during this time.

Ordonez–Rojop eventually fled Guatemala and entered the United States sometime in February 2003 without being admitted or paroled after inspection by an immigration officer. He asserts that he is afraid to return to Guatemala, because—although his family has remained in his former community and has not been harmed—civilians in his community have told his family members that "if he comes, he is ours." Ordonez–Rojop says that several of his former recruits have become police officers in Guatemala, and he is afraid that they will find him if he returns.

On June 29, 2012, the Department of Homeland Security charged Ordonez–Rojop with removability under the Immigration and Nationality Act. Before the IJ, he conceded removability and sought asylum, withholding of removal, and CAT relief. The IJ denied his application. Ordonez–Rojop appealed to the BIA, which dis-missed his appeal. He then filed this petition for review.

## II.

■ Before considering the merits of Ordonez–Rojop's petition, we must assess our subject-matter jurisdiction. We determine de novo our subject matter jurisdiction. Amaya–Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006).

"We lack jurisdiction to review final orders in immigration cases unless 'the alien has exhausted all administrative remedies available to the alien as of right.'" Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1297 (11th Cir. 2015) (quoting 8 U.S.C. § 1252(d)(1)). "A petitioner fails to exhaust her administrative remedies with respect to a particular claim when [he] does not raise that claim before the BIA." Id. Moreover, a petitioner's failure to assert a claim in his notice of appeal or brief to the BIA deprives this Court of jurisdiction even if the BIA considered that claim sua sponte. Amaya–Artunduaga, 463 F.3d at 1250–51.

Ordonez–Rojop failed to raise both his asylum and CAT claims before the BIA. In order to have raised a claim before the BIA, a petitioner must have "previously argued the 'core issue now on appeal' before the BIA." Indrawati, 779 F.3d at 1297. "Unadorned, conclusory statements" will not do. Id. Other than conclusory statements in his brief to the BIA and notice of appeal that he was appealing the IJ's decision denying his application for asylum, withholding of removal, and protection under CAT, Ordonez–Rojop made no mention of either his asylum or CAT claim. His entire brief to the BIA dealt with his eligibility for withholding of removal. Indeed, the conclusion to that brief asks only that "the order of the Immigration Judge denying Respondent's application for Withholding of Removal be reversed." As a

result, this Court lacks jurisdiction to consider whether the BIA erred when it upheld the IJ's denial of asylum and CAT relief, and Ordonez–Rojop's petition must be dismissed as to those claims.

Ordonez–Rojop did properly raise his withholding of removal claim before the BIA. His brief to the BIA explained in detail why he believes the IJ erred in denying his application on that issue. We therefore have jurisdiction to review the BIA's decision concerning withholding of removal.

### III.

■ "An alien is entitled to withholding of removal under the [Immigration and Nationality Act] if he can show his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion." Delgado v. U.S. Att'y Gen., 487 F.3d 855, 860–61 (11th Cir. 2007). "An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

"The alien can meet his burden by showing either (1) past persecution in his country based on a protected ground, in which case a rebuttable presumption is created that his life or freedom would be threatened if he returned to his country; or (2) a future threat to his life or freedom on a protected ground in his country." Delgado, 487 F.3d at 861 (quotation marks omitted). An alien need not show that the persecution he fears or has experienced will be or

was solely motivated by his race, religion, nationality, membership in a particular social group, or political opinion. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006). But he must show that the past or future persecution "was [or will be], at least in part, motivated by" his "race, religion, nationality, membership in a particular social group, or political opinion." Id. (quotation marks omitted).

Ordonez–Rojop contends that he met his burden because Guatemalans with prior service in the Guatemalan National Army constitute a particular social group and the evidence he presented showed that he had been persecuted in the past on account of his prior army service and would be persecuted because of that service if he returned to Guatemala. The BIA agreed with the IJ that Ordonez–Rojop had failed to show that any past persecution had been motivated by his service in the Guatemalan National Army. It concluded that he had failed to demonstrate that he was likely to be persecuted on account of a protected ground in the future for the same reason.[1]

"Where the BIA issues a decision, we review that decision, except to the extent that it expressly adopts the IJ's opinion." Chen v. U.S. Att'y. Gen., 463 F.3d 1228, 1230 (11th Cir. 2006) (per curiam). "Insofar as the BIA adopts the IJ's reasoning, we review the IJ's decision as well." Id. To the extent that the BIA adopted some of the IJ's findings and reasoning in this case, we review both decisions.

Whether Ordonez–Rojop's persecutors were or are likely to be motivated to persecute him because of his prior army ser-

---

1. The BIA also concluded that the threats against Ordonez–Rojop that were conveyed to him through his family while he was absent from Guatemala were not enough to demonstrate a likelihood of future persecution. But even if the threats were enough to demon-strate a likelihood of future persecution, Ordonez–Rojop would have to show that that persecution would be on account of a protected ground. As we will explain, substantial evidence supports the BIA's finding that he failed to make that showing.

vice is a question of fact.[2] "We review the BIA's factual determinations under the substantial evidence test." Min Yong Huang v. Holder, 774 F.3d 1342, 1344 (11th Cir. 2014). "Under this test, we must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quotation marks omitted). "To reverse the [BIA's] fact findings, [this Court] must find that the record not only supports reversal, but compels it." Rodriguez–Morales v. U.S. Att'y Gen., 488 F.3d 884, 890 (11th Cir. 2007) (quotation marks omitted).

There is substantial evidence in the record to support the BIA's conclusion that Ordonez–Rojop has not been and likely will not be targeted on account of his prior military service. For example, Ordonez–Rojop testified at his hearing before the IJ that his recruits turned against him and became angry because they believed that, although they had not been paid for defending the community from guerrillas, the government had paid Ordonez–Rojop a lot of money that he did not distribute. That suggests that the reason Ordonez–Rojop was attacked and might be again if he returns to Guatemala is that the former recruits and their families feel he cheated them, not because Ordonez–Rojop served in the Guatemalan National Army.

It is true that Ordonez–Rojop also testified that the members of his community, including his former recruits and their parents, were angry because there was "no justice" as a result of the 1996 peace accords. There would be no reason for them to take their anger over the accords out on Ordonez–Rojop unless they associated him with the government in some way. A factfinder could infer that Ordonez–Rojop's persecutors based that association on his prior military service. But a factfinder could also have inferred that Ordonez–Rojop's persecutors associated him with the government because of his work recruiting and training young men in his community, which occurred after his military service had ended.[3] Because we are required to "view the record evidence in the light most favorable to the [BIA's] decision and draw all reasonable inferences in favor of that decision," Tan, 446 F.3d at 1374, we must infer they associated Ordonez–Rojop with the government for that reason. Viewed in that light, Ordonez–Rojop's testimony that members of his community attacked him because they felt there was "no justice" after the peace accords could support the BIA's finding that any persecution he has or might experience would not be based on his prior army service.

2. Because we conclude that substantial evidence supports the BIA's conclusion that Ordonez–Rojop has failed to show a nexus between his past persecution or any future persecution he fears and his prior army service, we need not—and therefore do not—decide whether we would affirm the IJ's finding that former members of the Guatemalan National Army amount to a "particular social group" under 8 U.S.C. § 1231(b)(3)(A). We assume for the purposes of this opinion, that the IJ's finding on that point was correct.

3. In his brief to this Court, Ordonez–Rojop suggests in passing that his membership in this "Civil Patrol" after he left the army could be the basis for his persecution, indicating that we should consider whether the "Civil Patrol" (or perhaps the group of former recruiters for the "Civil Patrol") is a particular social group and whether he is eligible for withholding on the basis of that protected ground. Because he did not raise this argument before the BIA, it is unexhausted and we have no jurisdiction to consider it. Jeune v. U.S. Att'y Gen., 810 F.3d 792, 800, 802–03 (11th Cir. 2016) ("A petitioner has not exhausted a claim unless he has both raised the 'core issue' before the BIA and also set out any discrete arguments he relies on in support of that claim.") (citations omitted).

Likewise, Ordonez–Rojop's testimony that the recruits' parents brainwashed their children against him because the parents were "infiltrated with" the guerillas, being paid by the guerillas on the side, and thought Ordonez–Rojop was being paid by the government can be viewed two ways. The recruits' parents might have thought he was being paid by the government because he used to serve in the Guatemalan National Army. Or they could have thought the government was paying Ordonez–Rojop because he was in charge of recruiting and training young villagers to defend the village. Again, we are required to "draw all reasonable inferences in favor" of the BIA's conclusion, id. at 1374, and viewed in that light this evidence supports the BIA's finding that they were not motivated by Ordonez–Rojop's prior military service.

Finally, the fact that Ordonez–Rojop's family in Guatemala have been told "if he comes, he is ours" does not shed any light on why Ordonez–Rojop is being threatened. An applicant for withholding of removal must do more than demonstrate that he faces future persecution for some undefined reason. He must show that he faces future persecution on account of "his race, religion, nationality, membership in a particular social group, or political opinion." Delgado, 487 F.3d at 860–61.

Because substantial evidence supports the findings of the BIA that Ordonez–Rojop has not been targeted in the past because of his prior military service and is not likely to be targeted on that basis in the future, we must deny his petition for review of the denial of his application for withholding of removal.

**PETITION DISMISSED IN PART, DENIED IN PART.**